UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| CHRISTOPHER MCCOWEN,  ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 11-12216-FDS |
| ANTHONY MENDOSA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER
ON RESPONDENT'S MOTION TO LIFT STAY

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Christopher McCowen is an inmate at Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts; defendant Anthony Mendosa is the warden at SBCC.[1]

In 2012, the Court stayed the petition in order to permit McCowen to pursue an unexhausted claim that his counsel had provided ineffective assistance due to his failure to make a hearsay objection during the trial. That stay has been in place for nearly five and one-half years, during which McCowen has done almost nothing to present that claim to the state courts. Because the continuation of the stay is not in the interests of justice, the motion to lift the stay will be granted.

---

[1] The records of the Court show an address for petitioner at Old Colony Correctional Center in Bridgewater. If in fact petitioner is not housed at SBCC, he should promptly file a motion to amend to name the correct defendant.

**I.      Background**

      **A.      The Criminal Conviction**

On January 6, 2002, a woman named Christa Worthington was found murdered in her home in Truro, Massachusetts. Christopher McCowen was indicted for her murder in 2005. On November 16, 2006, a jury found McCowen guilty of (1) murder in the first degree based upon theories of extreme atrocity or cruelty and felony murder, (2) aggravated rape, and (3) aggravated burglary. He was sentenced to life imprisonment without the possibility of parole on the murder conviction and concurrent natural life sentences on the other two convictions.

McCowen appealed directly to the Supreme Judicial Court, which affirmed the convictions in a lengthy and detailed opinion. *See Commonwealth v. McCowen*, 458 Mass. 461 (2010).

      **B.      The First Three Motions for New Trial**

McCowen filed three post-conviction motions for a new trial with the state court before filing the present petition.[2] The first motion for a new trial alleged juror misconduct, and was denied by the trial court on April 4, 2008. (S.A. 42).[3] The second alleged the discovery of new exculpatory evidence, and was denied by the trial court on June 9, 2009. (S.A. 43-44). The SJC affirmed the denial of the first two motions for a new trial when it upheld the conviction on December 10, 2010. *McCowen*, 458 Mass. at 498. In the meantime, on October 5, 2010,

---

[2] McCowen's motions for a new trial have been filed pursuant to Mass. R. Crim. P. 30. Rule 30(b) allows the trial judge to grant a new trial "at any time if it appears that justice may not have been done." Rule 30(c)(2) requires that all grounds for relief not claimed in the original or amended motion are waived, "unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion."

[3] Citations to "S.A. __" refer to the supplemental appendix manually filed with the court.

McCowen had filed a third motion for a new trial, alleging false testimony by the medical examiner as to his credentials. (Resp't's Mot. to Lift Stay, Docket No. 44, Ex. 2 at 32). That motion was eventually denied by the trial court on April 29, 2014. (*Id.* Ex. 2 at 34).

### C. The Habeas Petition

On December 9, 2011, McCowen filed the present petition for a writ of *habeas corpus*. Although he was represented by counsel at the trial and has been represented by counsel for the last five years, he filed the petition *pro se*. The petition asserts two claims: grand jury bias and ineffective assistance of counsel. (Pet. at 6-9).

The first ground asserts that the indictment should have been dismissed because one of the grand jurors knew the victim and the victim's family. According to the petition, a judge questioned the grand juror outside the presence of McCowen and his lawyer, and then denied a motion to dismiss the indictment. It does not explicitly allege a constitutional violation, but appears to allege that McCowen had a constitutional right to be present during the hearing and to ask questions of the grand juror. (Pet. at 6).

The claim of grand jury bias was raised in McCowen's appeal to the SJC. *See McCowen*, 458 Mass. at 472-74. Although there is some doubt as to whether that issue was presented to the SJC as a federal constitutional question, the Commonwealth does not dispute that the claim has been exhausted.

The second ground asserts ineffective assistance of counsel in violation of McCowen's Sixth Amendment rights. Specifically, it asserts that counsel failed to object "to the admission of testimonial hearsay" and "relie[d] on that erroneously admitted hearsay to challenge the prosecution[']s theory of the case as to the time of death, the reliability of defendant[']s

confession, and ultimately defendant's guilt." (Pet. at 8). As "supporting facts," the petition states that "[t]he Massachusetts Supreme Court's decision affirming the convictions and the trial judge's denial of motions for a new trial under 'plain error' was based on error that the defense counsel failed to object to at trial."

The claim of ineffective assistance of counsel appears to be based on counsel's failure to object to the admission of the testimony of Dr. Henry Nields. *See McCowen*, 458 Mass. at 480. The autopsy of the victim had been conducted by Dr. James Weiner, who was unable to testify at the trial due to illness; instead, Dr. Nields testified, although his "knowledge of the case derived solely from his review of the reports, notes, and charts prepared by Dr. Weiner." (*Id.*). Among other things, Dr. Nields testified as to the time of death of the victim. (*Id.*). The SJC found that it was error "to permit Dr. Nields to testify to what Dr. Weiner saw, found, and opined." (*Id.*). However, defense counsel had failed to object, and therefore the SJC reviewed the matter only to consider whether the admission of the testimony "resulted in a substantial likelihood of a miscarriage of justice." (*Id.* at 481). The SJC declined to reverse on that basis. Among other things, it noted that Dr. Nields's conclusion as to the time of death "favored the defendant," and that defense counsel relied on the fact that in his closing argument. (*Id.* at 481-82).

According to the petition, McCowen did not exhaust his state remedies on Ground Two for the following reasons:

> McCowen[] is illiterate. Now, he reads and write at a grade six [level]. He still unable to comprehend the rights and privileges that someone with the knowledge would otherwise have. Besides his trial lawyer did his direct appeal and could not claim ineffective assistance.

(Pet. at 8).[4]

---

[4] His trial counsel, Robert A. George, represented McCowen until June 21, 2012, after McCowen had filed

4

### D.     The Stay of the Petition

On March 15, 2012, respondent moved to dismiss the petition for failure to exhaust state remedies. On November 19, 2012, after the case had been transferred to the undersigned judge, the Court issued a memorandum and order staying the petition.

The Court concluded that the petition was a "mixed" petition—that is, it included both exhausted and unexhausted claims. Specifically, the Court found that the ineffective-assistance claim had not been raised on direct appeal, or in any other manner in the Massachusetts courts.[5] The Court expressed concern that McCowen was then proceeding *pro se*, that he had limited literacy and legal skills, and that he would be time-barred from returning to federal court after having exhausted state remedies. Accordingly, the Court issued a stay of the petition in order to permit McCowen to litigate the issue of ineffective assistance of counsel in the state court. (Docket No. 13).

That stay went into effect on November 19, 2012. It has been in place for nearly five and one-half years.

### E.     The Fourth Motion for a New Trial

From November 9, 2012, when the stay was issued, to January 2014, McCowen took no action in state court of any kind.[6] On January 16, 2014, he filed a motion to withdraw his third

---

his first three motions for new trial and the present petition. (Resp't's Mot. to Lift Stay, Docket No. 44, Ex. 2 at 33). His current counsel, Gary G. Pelletier, filed a notice of appearance before the state trial court on January 1, 2011. (*Id.* Ex. 2 at 33). On July 25, 2013, Pelletier filed a notice of appearance in this proceeding. (Docket No. 16).

[5] Generally, if a petitioner files a "mixed petition" that includes both exhausted and unexhausted claims, a federal court may (1) dismiss the petition in its entirety, (2) allow the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, or (3) stay the petition until the petitioner returns to state court to exhaust his previously unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 275-76 (2005); *see Neverson v. Farquharson*, 366 F.3d 32, 42-43 (1st Cir. 2004).

[6] Again, since at least July 2013, he has been represented by counsel.

motion for a new trial.  (Resp't's Mot. to Lift Stay, Docket No. 44, Ex. 2 at 33).  That motion to withdraw was denied, and, as described above, the third motion for a new trial was denied in April 2014.

Finally, a year after that, on April 14, 2015, McCowen filed a fourth motion for a new trial in state court.  That motion raised two claims:  "newly discovered evidence and/or ineffective assistance of trial counsel."  (Resp't's Mot. to Lift Stay, Docket No. 44, Ex. 1 at 1).  It did not elaborate on those claims, but simply stated that McCowen intended to file a "detailed memorandum" of law in support of those claims after discovery has concluded.  (*Id.*).  To date, as far as this Court is aware, no discovery has occurred as to the ineffective-assistance claim and no memorandum of law has ever been filed.[7]

### F.  Developments Since 2015

In the three-year period after the filing of that fourth motion for a new trial, McCowen's counsel has periodically provided updates to this Court on the reason for the delay.  In substance, McCowen contends that the state court has yet to hear his fourth motion for a new trial, which includes the ineffective-assistance claim.

On April 14, 2016, the Commonwealth moved to lift the stay on the ground that McCowen has not diligently pursued his state remedies.  Since the filing of that motion, the Court has deferred ruling on it, but has convened multiple status conferences to ascertain from counsel whether any progress was being made in state court as to the claim.[8]

---

[7] Some post-conviction discovery relating to phone records and interviewing of witnesses has apparently occurred, starting in approximately June 2017 and continuing through January 2018.  *Commonwealth v. McCowen*, No. 0572CR00109 (Mass. Super. Ct., Barnstable Division, filed June 14, 2005) (docket publicly available at https://www.masscourts.org/eservices/home.page.2).

[8] The Court has held status conferences on April 15, 2016; May 17, 2016; July 20, 2016; October 3, 2016;

In a pleading filed on May 17, 2016, McCowen's counsel stated that the fourth motion for a new trial was based on two claims: (1) newly discovered evidence relating to possible geolocation evidence from cellular towers and (2) ineffective assistance of counsel, which relates back to the *habeas* petition with this Court. (Pet'r's Opp. to Mot. to Dismiss, Docket No. 47). Counsel represented at the time that the claim as to the cell-tower evidence had been delayed due to the death of an expert witness, and therefore McCowen's motion had not yet been heard by the state court. He also stated that he could not, or did not wish to, present his claims "piecemeal" to the state court.

On August 4, 2017, the Court issued an order to show cause why the stay should not be lifted for lack of diligence in pursuing his unexhausted claim. Among other things, the Court noted that "it is not clear what efforts petitioner has taken to exhaust his state-court remedies as to the claim for ineffective assistance," and that he "has not submitted documentation indicating the progress of the state-court proceeding for approximately nine months." (Docket No. 63).

On August 29, 2017, McCowen filed a response to the show-cause order in which he stated that he continues to seek evidence to support his motion for a new trial, and was awaiting responses to subpoenas from two wireless telephone carriers, Verizon and T-Mobile. (Resp. to Order to Show Cause, Docket No. 66). He also indicated that he had discovered evidence of witness perjury which, he contends, would be sufficient on its own for a new trial.

At the status conference on January 12, 2018, counsel for McCowen indicated that he was awaiting a reply from Verizon, due February 19, 2018, on an amended subpoena relating to

---

February 6, 2017; August 4, 2017; October 19, 2017; January 11, 2018; January 19, 2018; and March 22, 2018.

the cell-tower evidence. Counsel also stated that he had only very recently learned of a new potential claim, that a trial witness had recanted testimony. As of that time, no date had been set for a state court hearing on the fourth motion for a new trial.

## II. Analysis

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court affirmed the practice, in appropriate circumstances, of staying a federal *habeas* petition and holding it in abeyance pending exhaustion of state claims. *Id.* at 275-76. Such a procedure, in appropriate circumstances, vindicates the requirements of comity, allowing state courts to continue to have the first opportunity to rule on claims while preventing expiration of federal claims due to the statute of limitations. The *Rhines* court laid down a three-part test for the "limited circumstances" in which a stay and abeyance would be appropriate: (1) the petitioner has "good cause" for the failure to exhaust his state claims, (2) the unexhausted claims are not "plainly meritless," and (3) there is no indication of delaying tactics. *Id.* at 277-78.

The *Rhines* court was mindful of Congress' intentions in enacting the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 1996. That statute circumscribed the discretion of district courts to issue stays of *habeas* petitions, and noted that any procedures adopted by the courts must "be compatible with AEDPA's purposes." *Id.* at 276. The Supreme Court described those purposes as the reduction of delays in carrying out sentences and the state's interest in the finality of its judgments. *Id.* Too-frequent use of the stay procedure would undermine AEDPA's purposes, but tolling of the limitations clock gives effect to Congress' mindfulness of the requirement to exhaust state claims. *Id.* at 276-77.

The *Rhines* court further noted that "[e]ven where stay and abeyance is appropriate, the

district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." *Rhines*, 544 U.S. at 277. The court concluded that district courts should condition a stay on "reasonable time limits" to pursue exhaustion with the state. *Id.* at 278. The example given in the opinion was that a court must allow a petitioner 30 days from entry of the stay to proceed in state court, and 30 days upon completion to return to the federal court, which it described as a reasonable timeline. *Id.* "Without time limits, petitioners could frustrate AEDPA's goal of finality . . . ." *Id.*

Here, the Court issued a stay to permit petitioner to investigate his claim of ineffective assistance of counsel, and to present that issue to the state court. Little, if any, factual investigation of that claim was required. The claim is based on counsel's failure to object at trial to testimonial hearsay; that issue of the admission of the evidence was litigated on appeal, and indeed discussed at some length in the SJC opinion. *See McCowen*, 458 Mass. at 480-82. The SJC specifically noted that defense counsel had failed to object to the evidence, and that therefore a "miscarriage of justice" standard would apply. *Id.* at 481. That failure to object appears to form the entire basis of the ineffective-assistance claim here.

Notwithstanding the relative simplicity of that issue, once the stay was imposed, McCowen did not do anything to present this issue to the state court for the next two and one-half years. For all but eight months of that period, he was represented by counsel. Finally, in April 2015, he filed a bare-bones motion for a new trial in the state court, with no supporting memorandum. No apparent activity concerning the ineffective-assistance claim has occurred since that time.

The Commonwealth moved to lift the stay on April 14, 2016. Since that time, this Court

has repeatedly inquired as to the status of state-court proceedings, and expressed concern about the length of the delay.

None of McCowen's filings include any substantial discussion of the issues as to his claim of ineffective assistance of counsel. He has simply repeated that that claim relates back to the *habeas* filing with this Court. Instead, he appears to be pursuing other claims, and has stated in general terms that he cannot pursue his several claims "piecemeal."

There is at least one precedent providing some guidance as to the appropriate resolution of this matter. In *Gardner v. Luna*, 2014 WL 3784113 (D. Alaska July 31, 2014), the District of Alaska lifted a six-year old stay and dismissed a *habeas* petition. *Id.* at *3. With very little discussion, the court said only that "there appears to have been relatively little activity" and that it lifted the stay "in order to achieve some degree of finality." *Id.*[9] The Ninth Circuit found no abuse of discretion in the district court's lifting the stay. *Gardner v. Luna*, 668 F. App'x 265, 266 (9th Cir. 2016). Citing *Rhines*, the court simply noted that the district courts' discretion is limited by "the timeliness concerns reflected in AEDPA," and that "[a] mixed petition should not be stayed indefinitely." *Id.* The court then concluded that, once the stay had been lifted, the petition was properly dismissed because of unexhausted claims. *Id.* (citing *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008); 28 U.S.C. § 2254(b)(1)(A)).

The circumstances presented here are somewhat similar to those in *Gardner*. The Court provided a reasonable opportunity for McCowen to present his ineffective-assistance claim to the state court, and he has done almost nothing in response. Instead, he has pursued other potential

---

[9] The petitioner in *Gardner* had been convicted of the first-degree murder of his wife, and asserted ineffective assistance of counsel in his second petition for post-conviction relief. *Gardner v. Luna*, 668 Fed. Appx. 265, 266 (9th Circ. 2016).

claims, and simply yoked the ineffective-assistance claim to those other, unexhausted claims. The practical result has been to put this proceeding in limbo for more than half a decade.

Whatever the merits of his claims, the petition cannot be stayed indefinitely. To continue the stay would undermine the timeline concerns of AEDPA, and frustrate the goal of achieving finality of state convictions. Accordingly, the stay will be lifted, and petitioner will be required to elect whether he wishes to proceed on the claim of grand-jury bias.

### III. Conclusion

For the foregoing reasons, Respondent's Motion to Lift Stay is GRANTED. Within 28 days of this order, or by June 15, 2018, petitioner shall either (1) dismiss the petition in its entirety, or (2) dismiss the unexhausted claim (Ground Two) so that the case can proceed on the merits of the exhausted claim (Ground One).

**So Ordered.**

Dated:  May 18, 2018

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge